UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ALBERTA LIBBEY; VICTORIA LIBBEY
SIMAO; RICHARD LIBBEY; PAMELA
MAKAEA; M.A. SALAZAR, INC; and
ATLANTIC BEACH ASSOCIATES, INC.,

                     Plaintiffs,                 MEMORANDUM & ORDER
                                              13-CV-2717(JS)(ARL)

        -against-

VILLAGE OF ATLANTIC BEACH; BOARD
OF TRUSTEES OF THE VILLAGE OF
ATLANTIC BEACH; STEPHEN R. MAHLER,
individually and as Mayor of the
Village of Atlantic Beach; STEVEN
CHERSON, individually and as
Building Inspector and
Superintendent of Public Works for
the Village of Atlantic Beach;
R&W/ENGINEERS, P.C., and MICHAEL
L. WILLIAMS,

                Defendants.
----------------------------------------X

APPEARANCES

For Plaintiffs:          Frank Scaturro, Esq.
                        Fisher Broyles, LLP
                        44 Carole Avenue
                        New Hyde Park, NY 11040

For Defendants
Village Defendants:     James R. Finn, Esq.
                        Maurizio Savoiardo, Esq.
                        Michael Anthony Miranda, Esq.
                        Robert E.B. Hewitt, III, Esq.
                        Miranda Sambursky Slone Sklarin
                            Verveniotis LLP
                        240 Mineola Boulevard
                        Mineola, NY 11501

Engineering Defendants: James C. Clerkin, Esq.
                        Kral, Clerkin, Redmond, Ryan, Perry &
                            Girvan
                        170 Broadway, Suite 500
                        New York, NY 10038

SEYBERT, District Judge:

Plaintiffs Alberta Libbey, Victoria Libbey Simao, Richard Libbey, Pamela Makaea, M.A. Salazar, Inc., and Atlantic Beach Associates, Inc. (collectively "Plaintiffs") commenced this action on May 6, 2013 against Defendants Village of Atlantic Beach (the "Village"); the Board of Trustees of the Village of Atlantic Beach; Stephen R. Mahler, individually and as Mayor of the Village of Atlantic Beach; Steven Cherson, individually and as Building Inspector and Superintendent of Public Works for the Village of Atlantic Beach (collectively, the "Village Defendants"); R&W/Engineers P.C. ("R&W"); and Michael L. Williams ("Williams" and together with R&W, the "Engineering Defendants") alleging constitutional violations pursuant to 42 U.S.C. § 1983 ("Section 1983") and the New York State Constitution as well as several state law claims. Simultaneous with filing the Complaint, Plaintiffs also sought a temporary restraining order ("TRO") and preliminary injunction ("PI") seeking to enjoin the Village Defendants from selling Plaintiffs' land and from further prosecuting Plaintiff Alberta Libbey under Atlantic Beach Village Code § 185-3.1. (See Pls. Br. for TRO/PI, Docket Entry 4.) Plaintiffs subsequently filed a formal motion for a preliminary injunction. (See Pls. PI Br., Docket Entry 30.) The Court referred both requests to

Magistrate Judge Arlene R. Lindsay for a Report and Recommendation ("R&R").

Currently, the following are pending before the Court: (1) Plaintiffs' original request for a PI, their formal motion for such, and Judge Lindsay's oral R&R; (2) the Village Defendants' motion to dismiss; and (3) the Engineering Defendants' motion to dismiss. For the following reasons, Judge Lindsay's oral R&R is ADOPTED and Plaintiffs' requests for a PI are DENIED, the Village Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and the Engineering Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

BACKGROUND

I. Factual Background

The Libbey family has a long history in the Village of Atlantic Beach. (Compl. ¶ 31.) Plaintiff Alberta Libbey is a real estate broker and lifelong resident of the Village who owns two real estate businesses--M.A. Salazar and Atlantic Beach Associates. (Compl. ¶¶ 2, 17.) Plaintiffs Victoria Libbey Simao and Richard Libbey are Alberta Libbey's children, both of whom are licensed real estate agents. (Compl. ¶¶ 3-4, 20-21.)

Since 1996, Richard Libbey and his wife, Plaintiff Pamela Makaea, have been outspoken political critics of Defendants Mahler and Cherson and their allies in Village government. (Compl. ¶ 38.) Likewise, Victoria Libbey Simao has

been active in Village affairs and criticized Defendants. (Compl. ¶ 41-42.) According to Plaintiffs, Defendants have retaliated against them in various ways for their political speech. (See, e.g., Compl. ¶¶ 40, 48, 52-53.) Specifically, Plaintiffs allege that the Village has enacted various codes and regulations pursuant to which Plaintiffs have been targeted. For example, on November 17, 2008, the Village enacted Village Beach Code § 250-80, which terminated the right to maintain rooftop signs by amortization on June 1, 2010. (Compl. ¶ 63.) Plaintiffs allege that between 2008 and 2010, the Libbey family received twenty-two tickets for violations of Village Beach Code § 250-80. (Compl. ¶ 83.) Similarly, they allege that on or about July 7, 2010, Cherson issued two summonses to M.A. Salazar and Alberta Libbey for maintaining a nuisance and displaying a prohibited rooftop sign in violation of Atlantic Beach Village Code § 185-2, which was adopted in 1999. (Compl. ¶¶ 135, 137.) On or about January 21, 2011, Cherson issued another summons to M.A. Salazar and Alberta Libbey for maintaining an unsafe structure (Compl. ¶ 143) and, thereafter issued five additional summonses over the course of a single month (Compl. ¶ 144).[1]

---

[1] It is unclear whether paragraph 223 of the Complaint is intended as a summary or an additional allegation. In any event, it states the following: "Between 2008 and 2009, the Village issued at least fifteen summonses against Alberta Libbey and/or M.A. Salazar for political signs put up by Richard Libbey on property where he resided and worked." (Compl. ¶ 223.)

In particular, Plaintiffs allege that on November 14, 2011, the Village promulgated a new ordinance, Atlantic Beach Village Code § 185-3.1, targeting political signs (the "Political Sign Ordinance"). (Compl. ¶ 229.) After adopting the ordinance, the Village issued nine summonses between May 13, 2012 and August 31, 2012. (Compl. ¶ 233.) All of the summonses were issued against Alberta Libbey, the only person ever to be summonsed under the Political Sign Ordinance. (Compl. ¶ 239.) According to Plaintiffs, the Political Sign Ordinance "unconstitutionally singles out political signs" and "was adopted specifically to target the political speech of Richard Libbey . . . ." (Compl. ¶¶ 230-31.)

Plaintiffs further allege that, during the same general time period, Defendants targeted their property at 2035 Park Street in an attempt to force the Libbey Family to sell the land. (Compl. ¶ 87.) Originally, 2035 Park Street "was improved and contained a mixed use commercial and residential building" (the "Building") (Compl. ¶ 23), which served as M.A. Salazar and Atlantic Beach Associates' main office and principal place of business as well as Richard Libbey's residence. (Compl. ¶¶ 24-26.) On or about September 12, 2008, the Village issued Alberta Libbey a summons for cracked stucco to the Building. (Compl. ¶ 89.) That summons resulted in a bench warrant when Alberta Libbey failed to appear in Village Court

because she was in the hospital undergoing a kidney transplant. (Compl. ¶ 90.) Subsequently, on December 10, 2008, the Village issued Ms. Libbey another summons for cracked stucco to the Building. (Compl. ¶ 92.)

Although Cherson had indicated that cracked stucco could be resolved through a non-structural permit (Compl. ¶ 93), and the Libbey family obtained such a permit and began repairs (Compl. ¶¶ 100-02), Cherson issued a "Stop Work" order. (Compl. ¶ 104.) Cherson informed the Libbey family that, because the repairs they had undertaken included removal of cinder block, they would need to obtain a much more expensive structural permit. (Compl. ¶ 105.) The Libbeys applied for a structural permit, but the Village rejected their application and required them to bring the Building to code. (Compl. ¶¶ 109-11.)

On or about August 16, 2011, M.A. Salazar received a letter from the Village (the "Demolition Letter") stating that M.A. Salazar must demolish the Building within twenty days, or the Village would do so. (Compl. ¶ 151.) The Demolition Letter was issued pursuant to Chapter 80 of the Atlantic Beach Village Code, which was enacted in March 2009, allegedly as a further act of retaliation against the Libbey family. (Compl. ¶¶ 153-55.)

Ultimately, Defendants demolished the Building on November 29 and 30, 2011 at a cost of $41,687.24. (Compl.

¶¶ 218, 222.)  Defendants have demanded that Plaintiffs reimburse them the cost of the demolition or the property will be sold.

## II. Procedural Background

Three relevant procedural events occurred prior to the instant litigation--the Village proceedings, the state court proceedings, and the bankruptcy proceedings.

### A. Village Proceedings

In response to the Demolition Letter, M.A. Salazar requested a hearing before the Village Board of Trustees (Compl. ¶ 160), which ultimately took place on September 6, 2011 (Compl. ¶ 170).  As part of that hearing, Defendant Williams testified that he conducted a visual inspection of the Building from the sidewalk at the request of Cherson and ultimately determined that the building was unsafe.  (See Engineering Defs. Br., Docket Entry 16-14, at 2; Clerkin Decl., Docket Entry 16-1, Ex. D.)  Williams recommended either immediate demolition or a controlled demolition.  (Clerkin Decl. Ex. D at 87.)  "At the conclusion of the September 6th hearing, Mahler, supported by a unanimous vote of the Board of Trustees, condemned the Building and ordered it to be demolished by October 1, 2011."  (Compl. ¶ 200.)

B. <u>State Court Proceedings</u>

Thereafter, on September 29, 2011, M.A. Salazar filed a request for an Order to Show Cause in Nassau County Supreme Court pursuant to Article 78 seeking a TRO prohibiting the demolition of the Building. (Compl. ¶ 202.) Justice Roy S. Mahon held a hearing on October 11, 2011, which was continued on October 13, 2011. (Engineering Defs. Br. at 3; Miranda Decl., Docket Entry 20, Ex. H.) Justice Mahon heard evidence from both parties, including testimony from M.A. Salazar's expert engineer as well as from Williams. (Village Defs. Reply Br., Docket Entry 43, at 4; Miranda Decl. Ex. H.) Ultimately, Justice Mahon found that "[t]estimony and evidence adduced at the hearing established that a structure located at 2035 Park Street, Atlantic Beach, New York, owned by the plaintiff has fallen into a state of disrepair." (Miranda Decl. Ex. H at 150.) Accordingly, he denied the TRO.

On December 6, 2011, M.A. Salazar filed an Amended Article 78 Petition in New York State Supreme Court, Nassau County seeking, <u>inter alia</u>, to annul the Village's initial decision that a structural permit was required to repair the Building and the September 6, 2011 determination by the Village that the Building was unsafe. (Compl. ¶ 221; Miranda Decl. Ex. P.) M.A. Salazar also sought monetary damages for the pre-demolition value of the Building as well as a release from the

obligation to pay demolition costs.  (Miranda Decl. Ex. P.)  On June 20, 2012, Justice Mahon denied the Amended Article 78 Petition, citing primarily to his prior hearings and findings on October 11 and October 13, 2011 and concluding that res judicata barred M.A. Salazar's amended petition.  (Miranda Decl. Ex. X ("In light of this Court's decision after hearing which encompassed the Petitioner's first three requests for relief which are barred by the doctrine of res judicata . . ., to the extent that the Respondent seeks an Order pursuant to CPLR 7804(f)[ ] for a pre-answer dismissal of the first three causes of action in petitioner's amended petition, is granted.[2]").)

C. Bankruptcy Proceedings

During the course of the state court proceedings, on October 14, 2011, M.A. Salazar filed a Petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").  (See Engineering Defs. Br. at 3.)  There, the Bankruptcy Court granted the Village Defendants' motion for relief from the automatic bankruptcy stay and permitted the Village to proceed with demolition.  (Engineering Defs. Br. at 3-4.)

---

[2] M.A. Salazar also sought, and Justice Mahon denied, an order compelling Defendants to issue it building permits to erect a new structure on the Park Street property.  (Miranda Decl. Ex. X.)

The Village conducted the demolition and M.A. Salazar moved for sanctions, arguing in part that the Village conducted the demolition in violation of the automatic stay. (Village Defs. Br., Docket Entry 23, at 1-2.) The Bankruptcy Court denied M.A. Salazar's motion, which M.A. Salazar appealed to Judge Arthur D. Spatt of the District Court for the Eastern District of New York. See M.A. Salazar, Inc. v. Inc. Vill. of Atlantic Beach, No. 12-CV-3458.

In a relatively recent Memorandum and Order, Judge Spatt determined that it was unclear whether the Bankruptcy Court lifted the automatic stay or whether an automatic stay had ever applied in the first instance. M.A. Salazar, Inc., No. 12-CV-3458, Docket Entry 19 ("Spatt Order"). He therefore directed the Bankruptcy Court to clarify whether it lifted the stay or whether the stay never existed. See id. at 9. Judge Spatt also determined that the Village violated an Order issued by the Bankruptcy Court, which Judge Spatt designated "the Fence Order." See id. at 10. "The Fence Order stated that 'after 5:00 p.m. on October 21, 2011, it will be unlawful for any person to enter, remain or reside on the [Debtor's] property.'" Id. M.A. Salazar had argued that the Fence Order prohibited the demolition. The Village, on the other hand, argued that the Fence Order was designed solely to keep the property as safe as possible until a hearing on the automatic stay. See id. Judge

10

Spatt found that, contrary to the Bankruptcy Court's decision, the Fence Order was sufficiently specific and definite in its terms and that the Village violated it. <u>See</u> <u>id.</u> As such, he reversed the Bankruptcy Court's finding to the contrary and remanded the case back to the Bankruptcy Court to determine whether, pursuant to its inherent authority, the Village acted in bad faith in violating the Fence Order. <u>See</u> <u>id.</u> at 10-11.

While the Bankruptcy Court ultimately dismissed M.A. Salazar's Petition (<u>see</u> Clerkin Decl. Ex. H), a decision on remand is still pending.

DISCUSSION

The Complaint, which totals fifty pages, enumerates the following causes of action: (1) retaliation for the exercise of First and Fourteenth Amendment rights; (2) "substantive due process violation: arbitrary application of municipal laws"; (3) "equal protection violation: arbitrary and selective enforcement"; (4) procedural due process violation; (5) violation of the Fifth Amendment Takings Clause; (6) Fourth Amendment violation; (7) Atlantic Beach Village Code § 185-3.1 is unconstitutional on its face; (8) Atlantic Beach Village Code § 185-3.1 is unconstitutional as applied; (9) violation of Article 1, § 8 of the New York State Constitution: Freedom of Speech; (10) violation of Article 1, § 7 of the New York State Constitution: Takings Clause; (11) violation of Article 1, § 12

of the New York State Constitution: Search and Seizure Clause; (12) malicious prosecution; (13) abuse of process; (14) trespass; (15) nuisance; (16) tortious interference with business relations; (17) prima facie tort[3]; (18) intentional infliction of emotional distress; (19) reckless infliction of emotional distress; and (20) negligent infliction of emotional distress.[4]  The Engineering and Village Defendants each move to dismiss the Complaint in its entirety.  (See Docket Entries 16-17, 19.)

        In addition, simultaneous with commencement of this action, Plaintiffs filed a proposed Order to Show Cause for a TRO and PI, which they formalized in a subsequent motion for a PI.  (See Docket Entries 3, 30.)  The Court will first address those requests before turning to the Village Defendants' and Engineering Defendants' motions to dismiss.

I.  Preliminary Injunction

        The Court will set forth, first, the procedural history relevant to Plaintiffs' requests for a PI before turning

_____

[3] The Complaint contains two causes of action entitled "Count XVI."  (Compl. ¶¶ 45-46.)

[4] The Court notes that the Complaint does not make clear which defendants against whom they lodge their particular claims or whether they intend to assert each of the enumerated causes of action against all Defendants.  Accordingly, the Court may, at times, use "Defendants" generically.

to the applicable legal standards and Plaintiffs' requests more specifically.

    A.  <u>Procedural History Relevant to PI Requests</u>

Simultaneous with commencing the Complaint, Plaintiffs sought a TRO and/or PI. (<u>See</u> Pls. First PI Br., Docket Entry 4.) This first request sought to enjoin "the Village Defendants from selling Plaintiffs' land to pay for the Demolition Assessment and to enjoin further prosecution of Ms. Libbey under the unconstitutional Political Sign Ordinance for political signs posted by her son." (Pls. First PI Br. at 1-2.) The Court held a hearing on May 6, 2013, at which time the status quo was preserved and the Court adjourned the conference for a later date. (<u>See</u> 5/6/13 Minute Entry, Docket Entry 6.) The parties requested, and the Court granted, several extensions of time.

On July 17, 2013, the Village Defendants wrote to advise the Court of the status of Plaintiffs' request. (7/7/13 Vill. Ltr., Docket Entry 26.) The Village Defendants explained that the Village was in the process of repealing the Political Sign Ordinance and that the parties had been attempting to work out a stipulation. The letter went on to explain that, as to any potential sale of the property, a Sheriff's sale would need to take place, but that no such action had been commenced by the Village. The following day, Plaintiffs' counsel wrote to the

Court indicating that no stipulation had been reached and that Plaintiffs continued to maintain their entitlement to a PI. (Pls. 7/18/13 Ltr., Docket Entry 27.)

The Court ultimately held another hearing on August 14, 2013. That morning, Plaintiffs filed a formal motion for a PI. They argued, _inter alia_, that voluntary repeal of an unconstitutional law did not necessarily moot their application. (Pls. PI Br. at 1.) Plaintiffs' counsel argued that "although the Village dismissed the summonses against Plaintiff Alberta Libbey issued under the Political Sign Ordinance, it conspicuously did not dismiss the summonses with prejudice." (Pls. PI Br. at 3.) Discussions before the Court were not particularly fruitful, and the undersigned referred the matter to Judge Lindsay for an R&R.

On August 20, 2013, Judge Lindsay also held a hearing, at which time she recommended that Plaintiffs' requests for a PI be denied as moot for the reasons stated on the record. (8/20/13 Minute Entry, Docket Entry 34.) Judge Lindsay addressed in detail whether Plaintiffs' counsel and counsel for the Village Defendants had indeed entered into a valid and binding stipulation governing Plaintiffs' requests. (See, e.g., Tr.[5] at 6.) Plaintiffs' counsel, Mr. Scaturro, maintained that

---

[5] Cites to "Tr." refer to the transcript of Judge Lindsay's August 20, 2013 conference.

he had drafted and executed a stipulation on July 16, 2013, which he sent to Mr. Miranda, counsel for the Village Defendants. (Tr. at 7, 10.) Mr. Scaturro and Mr. Miranda then had a phone conversation during which the two disagreed on particular language in the stipulation. (Tr. at 7.) According to Mr. Scaturro, the disagreement over particular language ultimately meant that there was no meeting of the minds and the draft stipulation was a dead letter. (Tr. at 10.) After that phone conversation, however, Mr. Miranda signed the stipulation. (Tr. at 8.) As such, the Village Defendants have maintained that the stipulation is binding. Judge Lindsay agreed with the Village Defendants, finding that the "stipulation is a binding agreement between the parties." (Tr. at 24.)

Putting aside that issue, Judge Lindsay noted that Plaintiffs' requests raised "two very specific points"-- Plaintiffs "wanted to prevent the Village [D]efendants from prosecuting proceedings that were scheduled to take place on May 22nd before the Village Court for the alleged violations of [the Political Sign Ordinance]" and that the Village Defendants be enjoined from selling the property at 2035 Park Street. (Tr. at 4, 13.) As to prosecution under the Political Sign Ordinance, Judge Lindsay recommends that Plaintiffs' requests for a PI be denied as moot because the Village had repealed the Political Sign Ordinance and dismissed the tickets against Ms. Libbey.

(Tr. at 4.) Mr. Scatturo asserted that the tickets were not dismissed with prejudice, and therefore capable of reinstatement. (Tr. at 4-5.) Judge Lindsay rejected this argument, however, stating that "[t]here is no indication at all that the Village is retrenching in its position that -- and it has already taken action to repeal the law, you have no basis for your belief, at least nothing that you can describe, that would suggest that they're going to prosecute these offenses or violations which were the subject of the injunction." (Tr. at 13.)

Judge Lindsay further found that "with respect to the sale of the land, it's already very clear as I understand it that no action can take place and in fact -- what was it, because of the state case there was no judgment entered." (Tr. at 13.) Accordingly, she recommends that the Court deny Plaintiffs' request for a PI as moot in this regard as well. Mr. Scaturro reiterated his assertion that Plaintiffs are entitled to an injunction to enjoin any predicate proceedings for the sale of the property. (Tr. at 14.) Mr. Savoiardo, however, represented that the Village would not take any action until the Court rules on the demolition issues in the underlying case. (Tr. at 14-15.)

On September 4, 2013, Plaintiffs filed objections to Judge Lindsay's recommendations, arguing primarily that the

stipulation was not binding, that repeal of the Political Sign Ordinance does not moot their requests for an injunction as to the summonses issued thereunder, and that the Village Defendants' promise that they will not take any actions regarding sale of the property does not moot their requests in this regard.

B. Legal Standards

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted). A party may serve and file specific, written objections to a magistrate's report and recommendation within fourteen days of receiving the recommended disposition. See FED. R. CIV. P. 72(b)(2). Upon receiving any timely objections to the magistrate's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b). A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they object. See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citations omitted).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report.  See Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).  But if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (internal quotation marks and citation omitted).  Furthermore, even in a de novo review of a party's specific objections, the Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance."  Kennedy v. Adamo, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted).

C.  Plaintiffs' Requests

Preliminarily, the Court notes that Plaintiffs' objections reiterate the exact arguments made to Judge Lindsay.  Accordingly, a clear error standard applies.  However, even if this Court were to conduct a de novo review, the Court finds that Plaintiffs' requests for a PI are moot.

In order to justify a preliminary injunction, a movant must demonstrate:

> 1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor, and 3) that the public's interest weighs in favor of granting an injunction.

Metro. Taxicab Bd. of Trade v. City of N.Y., 615 F.3d 152, 156 (2d Cir. 2010) (internal quotation marks and citation omitted).

Putting aside the issue of whether Plaintiffs and the Village Defendants entered into a valid and binding stipulation,[6] the Court turns to Plaintiffs' requests for an injunction to enjoin prosecution under the Political Sign Ordinance. As both parties have noted, "[t]he voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or

---

[6] The Court notes that Plaintiffs and the Village Defendants have submitted various documents regarding a purported stipulation and have argued this issue extensively before both the undersigned and Judge Lindsay. Ultimately, however, whether the stipulation was binding or not is irrelevant, as Plaintiffs' requests are moot regardless of any stipulation.

Moreover, the Court takes this opportunity to address the parties' submissions regarding Plaintiffs' potential claim for attorneys' fees pursuant to 42 U.S.C. § 1988. (See Docket Entries 41, 44.) The Court cannot--and will not--issue any advisory opinions regarding the potential validity of a such a motion nor will the Court "state in its decision" whether any particular approach by Plaintiffs' counsel is "keeping with [his] professional obligations . . . ." (Docket Entry 44.) Plaintiffs' counsel is free to file a motion for attorneys' fees if and when appropriate, which the Court will consider in due course.

events have completely and irrevocably eradicated the effects of the alleged violation." Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y., 356 F.3d 365, 375 (2d Cir. 2004).

Here, the Village Defendants have repealed the Political Sign Ordinance and dismissed the summonses issued thereunder against Ms. Libbey. (See Vill. Defs.' Resp. Br. to Pls.' Objections, Docket Entry 41, at 11.) Thus, Plaintiffs cannot show irreparable harm absent injunctive relief. As Judge Lindsay correctly noted, Plaintiffs have requested injunctive relief specifically to prevent the Village Defendants from prosecuting Ms. Libbey under the Political Sign Ordinance. (Tr. at 4.) After Plaintiffs commenced this action, however, the Village undertook all of the necessary steps to fully repeal the ordinance. Furthermore, counsel for the Village Defendants has repeatedly represented to the Court that the Village will not attempt to re-prosecute Ms. Libbey under the Political Sign Ordinance. (Vill. Defs.' Resp. Br. to Pls.' Objections at 7.) Although representations to the Court do not necessarily equate to a showing that there is no reasonable expectation that the alleged violation will recur, see Dean v. Blumenthal, 577 F.3d 60, 65 (2d Cir. 2009), Plaintiffs in this case proffer only speculation to suggest recurrence. (See Tr. at 31 (Judge Lindsay: "You have no reason to believe that those tickets are going to be prosecuted. You haven't said anything to indicate

that they're going to be -- that those tickets which were the subject of this motion were going to resurrected for prosecution."); <u>Lamar</u>, 356 F.3d at 377 ("We see nothing on this record that would lead us to believe that Orchard Park intends to return to the questionable state of affairs that existed before Lamar filed suit."); <u>N.Y. State Chapter of Am. Coll. of Emergency Physicians, Inc. v. Wing</u>, 987 F. Supp. 127, 130 (N.D.N.Y. 1997) ("Since § 75 has been repealed out of existence, there is nothing left to enjoin and the Court thus concurs that the action is moot."). Accordingly, Judge Lindsay's recommendation as to Plaintiffs' requests for a PI to enjoin prosecution under the Political Sign Ordinance is ADOPTED, Plaintiffs' objections are OVERRULED, and Plaintiffs' requests are DENIED AS MOOT.[7]

---

[7] Although the Court finds that Plaintiffs' PI requests in this regard are moot, the Court makes no determination about Plaintiffs' underlying claims regarding the Political Sign Ordinance or the validity thereof. <u>See</u> <u>Dean</u>, 577 F.3d at 66 (holding that, although the plaintiff's requested injunctive relief was moot, that his challenge to an allegedly unconstitutional policy was not moot because the plaintiff sought damages); <u>Keepers, Inc. v. City of Milford, Conn.</u>, --- F. Supp. 2d ----, 2013 WL 1297839, at *5 (D. Conn. Mar. 30, 2013) ("'Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable.'" (quoting <u>Stokes v. Vill. of Wurtzboro</u>, 818 F.2d 4, 6 (2d Cir. 1987)); <u>Alive v. Hauppauge Sch. Dist.</u>, No. 08-CV-1068, 2009 WL 959658, at *5 (E.D.N.Y. Apr. 6, 2009) ("While the court has determined that any claims for injunctive and declaratory relief . . . are moot, the court finds itself compelled to allow these claims to survive insofar as they seek nominal damages for the violation of substantive constitutional rights.").

Plaintiffs have also requested a PI to enjoin the Village Defendants from selling the property at 2035 Park Street in order to satisfy the Demolition Assessment. As to this aspect of Plaintiffs' requests, Judge Lindsay determined that that there are multiple, preliminary steps that would need to occur before any potential sale of the property could take place and that Plaintiffs had not established that any of these steps were underway. (Tr. at 36.) Again, the Court agrees. Plaintiffs concede that "[t]here's been no assessment. There's been no litigation to reduce an assessment to judgment." (Tr. at 13-14.) Accordingly, there has been no showing of irreparable harm absent injunctive relief. Thus, Judge Lindsay's recommendation as to Plaintiffs' requests for a PI to enjoin the Village Defendants from selling the property at 2035 Park Street is ADOPTED, Plaintiffs' objections are OVERRULED, and Plaintiffs' requests are DENIED.

II. <u>Defendants' Motions to Dismiss</u>

In addition to litigating the PI issues, both the Village Defendants and the Engineering Defendants have moved to dismiss Plaintiffs' Complaint.

The Court will first address the applicable legal standards. To the extent that Defendants raise the same or similar arguments, the Court will provide one, comprehensive,

discussion on the matter.  To the extent that their arguments diverge, the Court will address them independently.

A.  <u>Legal Standard</u>

1.  <u>Standard of Review under Rule 12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions.  <u>See</u> <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008).  The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively.  <u>See</u> <u>id.</u>; <u>Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1998); <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998).

2.  <u>Standard of Review under Rule 12(b)(6)</u>

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v.</u>

<u>Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 773 (2d Cir. 1991).

B. Rooker-Feldman

The Engineering and Village Defendants maintain that the instant action centers around the demolition of the Park Street Building, an issue that has been previously litigated. (See Engineering Defs. Br. at 4; Village Defs. Br. at 4.) Accordingly, they assert that Plaintiffs' instant claims regarding money damages relating to the demolition of the Building and the resulting enforcement of the Demolition Assessment are barred by the doctrine of Rooker-Feldman. Plaintiffs counter that their claims are not barred by Rooker-Feldman because the Village hearing on September 6th was not a judicial proceeding and because they do not complain of injuries caused by the Article 78 proceedings in state court. (Pls. Opp. Br., Docket Entry 39, at 5-6.) The Court agrees with Plaintiffs and both the Village and Engineering Defendants' motions to dismiss based on Rooker-Feldman are DENIED.

The Rooker-Feldman doctrine "establishes the principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 362 (E.D.N.Y. 2010). Courts in this Circuit typically apply four factors to determine whether Rooker-Feldman bars a federal suit, namely that: (1) plaintiff is a state court loser; (2) plaintiff complains of injuries caused by the state court judgment; (3)

25

plaintiff seeks review of the state court judgment; and (4) the state court judgment was rendered before district court proceedings began. Id. Rooker-Feldman "bars not only claims that would involve direct review of a state court decision, but also claims that are 'inextricably intertwined' with a state court decision." Fullerton Ave. Land Dev. Ltd. v. Cianciulli, 48 F. App'x 813, 815 (2d Cir. 2002).

Here, Defendants assert that the Complaint primarily centers around the demolition of the Building and that Plaintiffs are improperly attempting to relitigate previous findings that the Building was unsafe and that demolition was required. (See, e.g., Village Defs. Br. at 4.) However, Plaintiffs contend, and the Court agrees, that Defendants have mischaracterized the prior state court proceedings. As Plaintiffs assert, "[t]he Nassau Supreme Court never ordered the Village Defendants to demolish the Building." (Pls. Opp. Br. at 6.) Rather, when M.A. Salazar filed its first Article 78 Petition in state court, Justice Mahon held a hearing "to determine whether . . . M.A. Salazar Incorporated should be grant[ed] a temporary restraining order against the . . . Village . . . and restraining the defendant from interfering with plaintiff's use of the premises until a full hearing and determination of the instant application could be made." (Miranda Decl. Ex. X (emphasis added).) Ultimately, Justice

Mahon denied M.A. Salazar's request, finding that "[t]estimony and evidence adduced at the hearing establishes that a structure located at 2035 Park Street, Atlantic Beach, New York, owned by the plaintiff has fallen into a state of disrepair." (Miranda Decl. Ex. X.) When M.A. Salazar filed its amended Article 78 Petition, Justice Mahon relied upon his prior findings and determinations in again denying M.A. Salazar's request. (Miranda Decl. Ex. X.)

While Rooker-Feldman may divest the Court of jurisdiction over the issue of the Building's safety, that is not what Plaintiffs allege. Plaintiffs do not necessarily dispute that the Building was unsafe. Indeed, they contend that the Village Defendants issued a "stop work" order and began threatening demolition at a time when particular repairs were already underway and the Building was most vulnerable. (See Compl. ¶ 104.) Rather, they maintain that the Defendants' actions constituted constitutional violations regardless of whether an injunction to annul the September 6, 2011 decision declaring the Building unsafe was appropriate or whether Justice Mahon's decision denying an injunction was correct. Accordingly, Plaintiffs' claims regarding the demolition of the Building and Defendants' alleged constitutional violations in connection therewith are not an appeal of the state court decision. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,

544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) (Rooker-Feldman "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Furthermore, Plaintiffs' claims regarding demolition relate primarily to the Village Defendants' actions in blocking Plaintiffs from making repairs to the Building. Thus, although Justice Mahon stated, by way of background, that "[a]ttempts to repair the structure on September 18, 2009 led to the issuance of a stop work order when it was discovered that the extent of the disrepair rendered the project unsafe" (Miranda Decl. Ex. X), he did not make any determination on this particular issue, nor was there a determination in any of the other prior proceedings. At its most basic level, Justice Mahon's decisions essentially found that the Building was in a state of disrepair and that the state court could not necessarily enjoin the Village from demolishing an unsafe building. His decisions, however, pertained only to M.A. Salazar's injunctive relief and did not, as the Village Defendants suggest, constitute a decision on the merits sanctioning demolition.

In fact, the Bankruptcy Court proceedings and the resultant appeal obviate this point. As outlined previously,

the Bankruptcy Court issued the Fence Order, which prohibited anyone from entering the Park Street property. See supra p. 9. On appeal, Judge Spatt determined that the Village had violated the Fence Order by entering the property and demolishing the Building. See supra p. 10.

Accordingly, the Engineering and Village Defendants' motion to dismiss all of Plaintiffs' claims regarding the demolition based upon the Rooker-Feldman doctrine are DENIED.

C. Res Judicata and Collateral Estoppel

Similar to their Rooker-Feldman argument, the Village Defendants also maintain that all of Plaintiffs' claims that "emanate from the demolition" are barred by the doctrines of collateral estoppel and res judicata. (Village Defs. Br. at 9.) More specifically, they assert that Justice Mahon held a hearing on October 11 and 13, 2011 and made findings of fact which now preclude their claims sounding in substantive and procedural due process, takings, Fourth Amendment/State search and seizure, retaliation, trespass, nuisance, tortious interference with business relations, prima facie tort, and emotional distress. (Village Defs. Reply Br. at 5.) Plaintiffs argue, inter alia, that "the state court's prior decisions were decidedly not an independent determination of any decisive issue of the Building's condition, but a recitation of evidence that provides background (however incomplete) about facts not materially in

dispute in this action . . . ." (Pls. Opp. Br. at 11.) The Court agrees with Plaintiffs.

With respect to preclusion under the doctrine of res judicata, the Village Defendants seem to cite to the state court proceedings. (See Village Defs. Br. at 9; Village Defs. Reply Br. at 3.) However, "res judicata does not apply to § 1983 claims brought after Article 78 proceedings." See Zbryshi v. Bd. of Trs. of N.Y. Fire Dep't Pension Fund, No. 01-CV-4801, 2004 WL 2238503, at *4 (S.D.N.Y. Oct. 4, 2004).

The issue of collateral estoppel, however, requires a lengthier discussion. "The doctrine of collateral estoppel or issue preclusion applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding, and the issue has been necessarily decided in the prior action, is decisive of the present action, and the litigant had a full and fair opportunity in the prior action to contest the decision." 33 Seminary LLC v. City of Binghamton, 869 F. Supp. 2d 282, 298 (N.D.N.Y. 2012); accord Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 275 (E.D.N.Y. 2009) ("Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair

opportunity to litigate the issue in the prior action." (internal quotation marks and citation omitted)).

As stated previously, the only issue "necessarily decided" in the state court proceedings was that the Building was in such a state of disrepair at that particular point in time that M.A. Salazar was not entitled to preliminary injunctive relief. In the proceedings before Justice Mahon, he heard testimony regarding the structural integrity of the Building, falling masonry block, and the impact of Plaintiffs' initial repairs on the continued stability of the Building. (See generally Miranda Decl. Ex. H.) Such evidence does not pertain to Plaintiffs' instant claims, nor did the state court proceedings afford Plaintiffs a full and fair opportunity to litigate them. See Reyes, 661 F. Supp. 2d at 276 (finding that, although collateral estoppel barred the plaintiffs' unlawful eviction claims due to a prior state court judgment, the plaintiffs' additional claims were not barred). For example, in the instant action Plaintiffs allege that Defendants abused their authority, an issue not necessarily decided in the state court proceedings. (Compl. ¶ 269 (alleging that the Village Defendants in concert with the Engineering Defendants violated Plaintiffs' substantive due process rights "by abusing their enforcement and interpretative authority under the Atlantic Beach Village Code and New York State Law in a selective,

irrational, and arbitrary manner"); Id. ¶ 288 (alleging that the Village Defendants violated Plaintiffs' procedural due process in part by issuing summonses without notices, injecting bias into the Village Court, and abusing the Village Code); Id. ¶ 342 (alleging that Defendants are liable for tortious interference with business relations because they "abuse[d] . . . their authority . . . for the ulterior purpose of punishing the Libbey Family for their political views . . .").)

Accordingly, the Village Defendants' motion to dismiss on res judicata and collateral estoppel grounds is DENIED.

D. Prior Action Pending

The Village Defendants additionally assert that Plaintiffs' claims seeking damages arising from the demolition must be dismissed pursuant to the prior action pending doctrine. (Village Defs. Br. at 7.) The Court disagrees.

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). Such actions are within the Court's discretion and essentially depend on the equities of a particular case, rather than the application of any rigid test. See id.; accord Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 525 (S.D.N.Y. 2011). In general, "[e]fficiency supports staying or dismissing a claim

when there is a pending suit raising the same issues and claims." Byron v. Genovese Drug Stores, Inc., No. 10-CV-3313, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011).

The Village Defendants maintain that M.A. Salazar's appeal from the Bankruptcy Court seeks money damages for the pre-demolition value of the building, "precisely the demolition damages being sought at bar." (Village Defs. Br. at 8.) Here, "[w]hile there is a 'rough resemblance between the two suits,' they are not so duplicative that the Court should exercise its discretion to stay or dismiss this action." Amusement Indus., Inc., 820 F. Supp. 2d at 525 (quoting Curtis, 226 F.3d at 136). M.A. Salazar's appeal from the Bankruptcy Court pertains to whether there was an automatic stay in place and the amount of sanctions, if any, for the Village's violation of the Bankruptcy Court's Fence Order. The instant action, in contrast, involves alleged constitutional violations and therefore different bases of liability.[8] Furthermore, the action before this Court involves matters regarding not only the demolition, but also the Political Sign Ordinance and various other issues. See Quinn v. Walgreen Co., --- F. Supp. 2d ----, 2013 WL 4007568, at *4 (S.D.N.Y. Aug. 7, 2013) (declining to stay in part because,

---

[8] While the Bankruptcy Court's imposition of sanctions, if at all, might have an impact on Plaintiffs' trespass claim in the instant matter, the trespass claim is being dismissed for the reasons discussed below.

regardless of disposition of a pending motion in the prior filed case, additional issues would still require a decision).

Accordingly, the Village Defendants' motion to dismiss pursuant to the prior action pending doctrine is DENIED.

E. <u>Plaintiffs' Standing</u>

The Village Defendants further move to dismiss because, they argue, Plaintiffs lack standing. According to the Village Defendants, M.A. Salazar was the only owner of the Building, and therefore is the only proper plaintiff in any of the claims regarding the demolition. (Village Defs. Br. at 10.) In addition, the Village Defendants assert that M.A. Salazar, Victoria Libbey Simao, Richard Libbey, Pamela Makaea, and Atlantic Beach Associates, Inc. lack standing to maintain any of the claims regarding the enforcement of the Political Sign Ordinance. (Village Defs. Br. at 11.) The Court will address each issue in turn.

Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); <u>see also</u> U.S. Const., art. III, § 2. "This limitation is effectuated through the requirement of standing." <u>Cooper v. U.S. Postal Serv.</u>, 577 F.3d 479, 489 (2d Cir. 2009) (citing <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S.

464, 471-72, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990). There are three requirements to establish Article III standing: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Cooper, 577 F.3d at 489; see also Allen, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

As to the demolition claims, the Village Defendants maintain that, except for M.A. Salazar, Plaintiffs have not--and cannot--allege injury in fact because they did not own the Building.  The Court disagrees except as to Plaintiff Pamela Makaea. "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) (quoting Lujan, 504 U.S. at 560); cf. Amnesty Int'l U.S.A. v. Clapper, 667 F.3d 163, 171 (2d Cir. 2011) ("The critical inquiry for standing is whether the plaintiffs are simply citizens with an abstract claim that some action was unlawful,

or whether they, in some particular respect not shared by every person who dislikes the action, are injured by that action."). Injury is "concrete and particularized" if it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1; accord Baur, 352 F.3d at 632, and injury is "actual or imminent" if the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (internal quotation marks and citation omitted).

The Court finds that Plaintiffs' claims that they were living in or working out of the Building satisfy the standing requirement at this stage of the litigation. See Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (alteration in original) (quoting Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 889, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)); accord Butler v. Suffolk Cnty., 289 F.R.D. 80, 90-91 (E.D.N.Y. 2013). However, it is unclear what connection, if any, Pamela Makaea had to the Building. According to the Complaint, the Building served as a residence for Richard Libbey, but not necessarily for his wife. (See Compl. ¶ 26.) Accordingly, the Village Defendants' motion in

this regard is GRANTED as to Pamela Makaea but DENIED for the additional Plaintiffs.

As to Plaintiffs' claims regarding the First Amendment and the Political Sign Ordinance, the Village Defendants assert that only Alberta Libbey has standing. (Village Defs. Br. at 11.) Notably, Plaintiffs implicitly concede that M.A. Salazar, Victoria Libbey Simao, Pamela Makaea, and Atlantic Beach Associates, Inc. lack standing. (See Pls. Opp. Br. at 17 (arguing only that Richard and Alberta Libbey were "deterred from putting up additional signs"). As such, the Village Defendants' motion is GRANTED in this regard.

However, contrary to the Village Defendants' assertion, the Court finds that Richard Libbey does have standing to bring the First Amendment claims. The Complaint alleges that Richard Libbey erected political signs, that the Village Defendants thereafter issued summonses against Alberta Libbey, and that, as a result, Richard and Alberta Libbey decided not to post additional signs. (See, e.g., Compl. ¶¶ 232, 242.) Although the Complaint does not allege that the Village Defendants retaliated against Richard Libbey directly, Plaintiffs' have alleged enough to confer his standing at this stage. See Jones v. Bay Shore Union Free Sch. Dist., --- F. Supp. 2d ----, 2013 WL 2316643(JS)(GRB), at *4-5 (E.D.N.Y. May, 28, 2013).

Accordingly, the Village Defendants' motion to dismiss based on standing is GRANTED IN PART and DENIED IN PART. The Village Defendants' motion is GRANTED insofar as it asserts that Pamela Makaea lacks standing to assert claims relating to the demolition and that M.A. Salazar, Victoria Libbey Simao, Pamela Makaea, and Atlantic Beach Associates, Inc. lack standing to bring claims regarding the First Amendment and the Political Sign Ordinance. Their motion is otherwise DENIED in this regard. As the Complaint contains few, if any, other relevant allegations as to Pamela Makaea, the Clerk of the Court is directed to TERMINATE her as a Plaintiff in this matter.

F. Plaintiffs' Due Process Claims

Plaintiffs allege both substantive and procedural due process violations against Defendants. As to substantive due process, Plaintiffs allege that "[t]he Village Defendants infringed on Plaintiffs' property rights by abusing their enforcement and interpretative authority under the Atlantic Beach Village Code and New York law in a selective, irrational, and arbitrary manner that was starkly different from similarly situated residents and property owners in the Village." (Compl. ¶ 269.) They further assert that all Defendants "acted in concert" with one another, under color of state law, to violate their substantive due process rights. (Compl. ¶ 272.) As to procedural due process, Plaintiffs allege

38

> [t]he Village Defendants repeatedly provided
> inadequate process with respect to members
> of the Libbey Family when they issued
> summonses without providing notice as
> required by the Atlantic Beach Village Code;
> when Mr. Mahler injected bias into the
> Village Court, inter alia, by indicating
> that judicial harshness toward members of
> the Libbey family was a factor in appointing
> or retaining village justices; and when the
> Building Code under the Atlantic Beach
> Village Code was abused by Defendants Mahler
> and Cherson to force Plaintiffs not to
> repair the 2035 Park Street Office and then
> to base a demolition order on a professional
> opinion procured from Defendant Williams
> without allowing him to conduct a full
> inspection of the premises essential to an
> adequate process.

(Compl. ¶ 288.) Again, Plaintiffs assert that all Defendants acted in concert to deprive Plaintiffs of their procedural due process rights. (Compl. ¶ 291.) The Court will address each of these claims in turn.

## 1. Substantive Due Process

The Village Defendants move to dismiss Plaintiffs' substantive due process claims because, they argue, the need for demolition had previously been litigated and decided in the Village's favor and, therefore, Plaintiffs cannot now claim that they had a legitimate claim of entitlement to the Building in order to maintain a substantive due process claim. (Village Defs. Br. at 12.) The Village Defendants also assert that, even if Plaintiffs did have a protectable property interest, the Village Defendants' conduct was not "outrageously arbitrary."

(Village Defs. Br. at 12-13.)  The Court finds that dismissal of Plaintiffs' substantive due process claims is appropriate, but not for the reasons that the Village Defendants have articulated.  See Sula v. City of Watervliet, No. 06-CV-0316, 2006 WL 2990489, at *3 (N.D.N.Y. Oct. 19, 2006) (finding, under facts similar to those in the instant action, "that plaintiff's substantive due process claim against defendants must be dismissed, but not for the reasons proffered by defendants.").

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property."  U.S. Const. Amend. XIV, § 1.  Thus, to establish a violation of substantive due process, Plaintiffs must first identify a valid liberty or property interest.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001); Toussie v. Cnty. of Suffolk, 806 F. Supp. 2d 558, 579 (E.D.N.Y. 2011).

Here, although Plaintiffs have identified a protected property interest, their claim for substantive due process cannot stand.  In Albright v. Oliver, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), the Supreme Court held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for

analyzing these claims."  Thus, courts in this Circuit have held

that "[w]here, as here, the government demolishes a building, a

'seizure' results within the meaning of the Fourth Amendment."

DeBari v. Town of Middleton, 9 F. Supp. 2d 156, 161 (N.D.N.Y.

1998); see Sula, 2006 WL 2990489, at *3 (dismissing substantive

due process claim because claim based upon demolition grounded

in Fourth Amendment); Smith v. City of Albany, No. 03-CV-1157,

2006 WL 839525, at *9 (N.D.N.Y. Mar. 27, 2006).  Accordingly,

Plaintiffs' substantive due process claims "fit squarely within

the contours of the Fourth Amendment's protections,"[9] DeBari, 9

F. Supp. 2d at 161, and are therefore DISMISSED.

　　　　2. Procedural Due Process

　　　　The Village Defendants move to dismiss Plaintiffs'

procedural due process claims on the basis that Plaintiffs

received adequate process through an Article 78 proceeding.  The

Court disagrees.

　　　　To prevail on a procedural due process claim, a

plaintiff must show that he: (1) had a "protected liberty or

property interest" and (2) was "deprived of that interest

without due process."  McMenemy v. City of Rochester, 241 F.3d

279, 286 (2d Cir. 2001).  Here, the Village Defendants argue

that Plaintiffs were afforded adequate process.

---

[9] The Court will separately address the viability of Plaintiffs'
Fourth Amendment claim.

Although the Second Circuit has held that an Article 78 proceeding generally satisfies due process "if the deprivation is caused by random, unauthorized state conduct," Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404 (2d Cir. 1992) (citing Parratt v. Taylor, 451 U.S. 527, 543, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981); Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)), an Article 78 proceeding is not sufficient where "it is the state system itself that destroys a complainant's property interest, by operation of law," Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see also Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."); Van Oss v. New York, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011) ("[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies.").

Here, Plaintiffs allege that Defendants followed state procedures in effectuating a demolition and therefore at least plausibly allege that the Article 78 proceedings were not an adequate remedy in this case. See Cathedral Church of

Intercessor v. Inc. Vill. of Malverne, No. 02-CV-2989, 2006 WL 572855, at *7 (E.D.N.Y. Mar. 6, 2006). Accordingly, this issue cannot properly be resolved in a motion to dismiss and the Village Defendants' motion to dismiss Plaintiffs' procedural due process claim is DENIED. See 33 Seminary LLC, 869 F. Supp. 2d at 301 ("The issue of whether an Article 78 proceeding under New York law provided adequate remedy is not properly resolved on motion to dismiss.").

G. Plaintiffs' Fourth Amendment Claim

The Village Defendants also move to dismiss Plaintiffs' Fourth Amendment seizure claim--and its equivalent under the New York State Constitution--because, they argue, "the Village only proceeded with the demolition after a favorable, unappealed determination in the state court and village court." (Village Defs. Br. at 14.) The Court disagrees.

"The Fourth Amendment protects individuals 'against unreasonable searches and seizures.'" Palacios v. Burge, 589 F.3d 556, 562 (2d Cir. 2009) (quoting U.S. Const. Amend. IV.) "Whether the Fourth Amendment is violated depends upon whether the seizure was 'reasonable.'" DeBari, 9 F. Supp. 2d at 163. "Reasonableness," though it does not have a precise definition "generally requires a 'careful balancing of government and private interests.'" Id. (quoting Soldal v. Cook County, Ill., 506 U.S. 56, 71, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992)).

Preliminarily, the Court notes that the state court proceedings did not affirmatively decide demolition on the merits. Moreover, on appeal from the Bankruptcy Court, Judge Spatt determined that the Village Defendants, in carrying out the demolition, violated at least one of the Bankruptcy Court's explicit orders. See supra p. 10.

However, even given the state court's decisions on M.A. Salazar's requests for injunctive relief, Plaintiffs have sufficiently alleged that Defendants may have acted unreasonably given the particular facts of this case. In DeBari, for example, the District Court for the Northern District of New York declined to enter summary judgment in the defendants' favor, even though defendants demolished the subject property pursuant to an order by the town supervisor. DeBari, 9 F. Supp. 2d at 163.

Furthermore, Plaintiffs allege that their engineer determined, after a full inspection, that demolition was not necessary. (See, e.g., Compl. ¶¶ 165-66.) See Heidorf v. Town of Northumberland, 985 F. Supp. 250, 259 (N.D.N.Y. 1997) (denying summary judgment because there were issues of fact regarding reasonableness of immediate demolition of the building). Such allegations, particularly in light of the bankruptcy proceedings--in which the Bankruptcy Court issued the Fence Order and prohibited persons from entering the Park Street

property but otherwise maintained the status quo--are sufficient to overcome a motion to dismiss. Accordingly, the Village Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim and its equivalent under the New York State Constitution is DENIED.

H. Equal Protection

The Village Defendants move to dismiss Plaintiffs' Equal Protection claim because, they say, Plaintiffs have only speculatively alleged that they were treated differently from other Village residents and because they have not sufficiently alleged others who were "similarly situated." (Village Defs. Br. at 14.) More specifically, the Village Defendants argue that, as to the demolition, "[P]laintiffs certainly cannot claim this was predicated on anything but safety reasons given the unappealed holdings . . . and it will thus be impossible to identify any property-owner treated differently for improper reasons." (Village Defs. Br. at 15.) As to the Political Sign Ordinance, the Village Defendants argue that some other signs that Plaintiffs have identified were prior non-conforming uses, a sign at the Westbury Beach Club complied with code requirements, and a sign at A.B. Petrey was initially denied a sign permit but later granted a variance following a hearing. (Village Defs. Br. at 15.) The Court will address each of these arguments in turn.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011). Here, Plaintiffs base their Equal Protection claim on a theory of "selective enforcement." In order to adequately allege a selective enforcement claim, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (internal quotation marks and citations omitted).

Courts in this Circuit are split regarding the definition of "similarly situated" in selective enforcement and class-of-one cases. Some courts have held that the definitions are the same in both cases, and the plaintiff must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis

of a mistake." Roman Catholic Diocese of Rockville Centre, N.Y.
v. Inc. Vill. of Old Westbury, No. 09-CV-5195, 2012 WL 1392365,
at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and
citations omitted) (collecting cases). Other courts have
applied a somewhat less stringent standard in selective
enforcement cases, requiring "plaintiffs to show that plaintiff
and comparators were 'similarly situated in all material
respects,' or that 'a prudent person, looking objectively at the
incidents, would think them roughly equivalent.'" Missere, 826
F. Supp. 2d at 561 (quoting Vassallo v. Lando, 591 F. Supp. 2d
172, 184 (E.D.N.Y. 2008); Yajure v. DiMarzo, 130 F. Supp. 2d
568, 572 (S.D.N.Y. 2001)).

Regardless of the particular standard, however,
Plaintiffs' Equal Protection claim based on the demolition
fails. As the Village Defendants' correctly note, Plaintiffs
have failed to allege sufficient comparators in order to
maintain their claim as to the demolition. The Complaint
contains only speculative allegations that the Village did not
employ the condemnation process against others similarly
situated. (Compl. ¶ 156.) Although Plaintiffs do allege that
the Catalina Beach Club made repairs under a non-structural
permit similar to those that Plaintiffs were required to make to
the Building under a structural permit (Compl. ¶ 94),
Plaintiffs' single, conclusory allegation is insufficient.

Accordingly, the Village Defendants' motion is GRANTED in this regard and Plaintiffs' Equal Protection claim based on the demolition is DISMISSED WITHOUT PREJUDICE.

In contrast, Plaintiffs sufficiently allege comparators insofar as their Equal Protection claim based on the Political Sign Ordinance is concerned. For example, Plaintiffs allege that "the Village conspicuously failed to cite other residents who erected signs that violated the Political Sign Ordinance or who erected commercial signs that were either otherwise prohibited by the Atlantic Beach Village Code or subject to fewer restrictions than political signs." (Compl. ¶ 244.) Specifically, Plaintiffs point to signs at the Petry A.B. real estate office, at the Westbury Country Club, and at 1888 Park Street Atlantic Beach. (Compl. ¶¶ 245-46.) Taking these allegations as true, as the Court must on a motion to dismiss, see supra p. 23,[10] Plaintiffs have sufficiently alleged others who were similarly situated in order to overcome the Village Defendants' motion. Accordingly, the Village Defendants' motion to dismiss Plaintiffs' Equal Protection claim based on the Political Sign Ordinance is DENIED.

---

[10] Although the Village Defendants submit evidence to refute Plaintiffs' Equal Protection claim based on the Political Sign Ordinance, the Court cannot consider such evidence at the motion to dismiss stage and declines to convert the motion to one for summary judgment.

I. <u>Plaintiffs' Takings Claims</u>

The Village Defendants move to dismiss Plaintiffs' takings claims because the Building was a dangerous structure and therefore the demolition was performed to protect the public. (Village Defs. Br. at 20.) The Court disagrees.

Certainly the Village Defendants are correct that "a municipal demolition of an imminently dangerous structure in order to protect the public is an exercise of the police power and does not constitute a 'taking.'" <u>Wantanabe Realty Corp. v. City of N.Y.</u>, 315 F. Supp. 2d 375 (S.D.N.Y. 2003). However, it is not clear that the Building posed an imminent danger. As previously stated, the state court determined that the Building was in a state of disrepair and, accordingly, that M.A. Salazar was not entitled to a TRO. <u>See</u> <u>supra</u> p. 28. However, it does not necessarily follow that the Building was imminently dangerous and the Bankruptcy Court at least arguably believed that the Fence Order was sufficient to maintain the public's safety. Thus, Plaintiffs' claims, while barely crossing the threshold,[11] are sufficient to state a claim. Accordingly, the Village Defendants' motion to dismiss Plaintiffs' takings claims is DENIED.

---

[11] The Court does not make any ruling as to the viability of this claim beyond those arguments that the Village Defendants have specifically raised.

J. <u>Plaintiffs' First Amendment Retaliation Claims</u>

The Village Defendants further move to dismiss Plaintiffs' First Amendment retaliation claims as time-barred and because Plaintiffs have failed to allege the essential elements of such a claim. The Court agrees with the Village Defendants that some of Plaintiffs' bases for a First Amendment retaliation claim are time-barred. However, as to Plaintiffs' timely claims, the Court finds that Plaintiffs have otherwise sufficiently alleged the elements of a First Amendment retaliation claim.

Section 1983 claims are subject to a three-year statute of limitations. <u>See</u> <u>Ormiston v. Nelson</u>, 117 F.3d 69, 71 (2d Cir. 1997); <u>see</u> <u>also</u> <u>Brown v. State</u>, 250 A.D.2d 314, 318, 681 N.Y.S.2d 170 (3d Dep't 1998) (noting that the statute of limitations for state constitutional torts is also three years). Plaintiffs commenced this action on May 6, 2013, yet allege First Amendment violations beyond the three-year limit. The Village Defendants assert that, even assuming the statute of limitations was tolled during the period when Plaintiffs were ready to file the Complaint but agreed to give the Village more time, any allegations prior to April 15, 2010 are time-barred. (Village Defs. Br. at 17.) Plaintiffs, however, maintain that their claims are not barred by the three-year statute of limitations because they have alleged a "continuing violation."

"Under the continuing violation doctrine, 'if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " Bermudez v. City of N.Y., 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)). To bring a claim under the continuing violation doctrine, Plaintiffs must allege a discriminatory policy or practice and a discriminatory act during the statutory period. See S. Lyme Prop. Owners Ass'n v. Town of S. Lyme, 539 F. Supp. 2d 547, 557 (D. Conn. 2008). "However, courts in this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory under compelling circumstances." Ruane v. Cnty. of Suffolk, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013).

Here, although Plaintiffs have asserted violations that span several years, this is not sufficient. "'[D]iscrete incidents of discrimination that are not related to discriminatory policies or mechanisms' do not give rise to a continuing violation." Young v. Strack, No. 05-CV-9764, 2007 WL 1575256, at *4 (S.D.N.Y. May 29, 2007) (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)). Thus, Plaintiffs' allegations regarding the Village Defendants' specific acts do not save their untimely claims. Indeed, where, as here,

Plaintiffs can identify particular periods of time and circumstances (see, e.g., Compl. ¶ 40 (alleging specific dates on which retaliatory acts occurred)), they have merely alleged isolated acts, which Plaintiffs could have recognized as actionable at the time. Cf. Ruane, 923 F. Supp. 2d at 459-60 ("Compelling circumstances have been found where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." (internal quotation marks and citation omitted)).

Accordingly, Plaintiffs' retaliation allegations which occurred prior to April 15, 2010 are time-barred and therefore are DISMISSED WITH PREJUDICE.

As to Plaintiffs' timely retaliatory allegations, however, they have otherwise sufficiently stated a claim. Generally, a private citizen bringing a First Amendment retaliation claim must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

The Village Defendants assert that Plaintiffs have failed to allege that Defendants' actions were motivated or substantially caused by the exercise of Plaintiffs' First Amendment rights. The Court, however, cannot decide this issue at the motion to dismiss stage. "Such matters [as defendants' motivation] are required only to be 'averred generally' in a complaint, and need not be pled with specificity." Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 240-41 (E.D.N.Y. 2009). Indeed, alleging motivation with specificity would be difficult. See Gagliardi v. Vill. of Pawling, 18 F.3d 188, 195 (2d Cir. 1994).

The Village Defendants further argue that, even if Plaintiffs have sufficiently alleged a causal link, they have not alleged "actual chill." Again, the Court disagrees. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Curley, 268 F.3d at 73. Here, though, Plaintiffs have alleged that Richard and Alberta Libbey wished to display political signs but "decided not to do so under the weight of the summonses the Village had issued and would continue to issue." (Compl. ¶ 242.) Thus, although the Village Defendants assert that Plaintiffs continued to display signs even after receiving summonses under the Political Sign Ordinance (Village Defs. Br. at 19), Plaintiffs have set forth sufficient allegations to show

that, at some point in time, the summonses became too great a
weight to continue posting signs.

Accordingly, the Village Defendants' motion to dismiss
Plaintiffs' timely First Amendment retaliation claims for a
failure to sufficiently allege the necessary elements is DENIED.

K.  Plaintiffs' State Law Claims

In addition to their constitutional claims, Plaintiffs
also assert several state law tort claims, which the Village
Defendants maintain must be dismissed on statute of limitations
grounds and for failure to serve a notice of claim.

General Municipal Law § 50-e requires service of a
notice of claim within 90 days after a claim arises "[i]n any
case founded upon tort where a notice of claim is required by
law as a condition precedent to the commencement of an action or
special proceeding against a public corporation."  N.Y. GEN. MUN.
LAW § 50-e(1).  General Municipal Law § 50-i provides that "the
action or special proceeding shall be commenced within one year
and ninety days after the happening of the event upon which the
claim is based."  Id. § 50-i(1).

1.  Statute of Limitations

The Village Defendants maintain that Plaintiffs'
trespass; nuisance; tortious interference with business
relations; prima facie tort; and intentional, reckless, and
negligent infliction of emotional distress claims all relate to

54

the demolition, which occurred on November 29, and 30, 2011, and therefore are time-barred by the one-year-and-ninety-day statute of limitations. Plaintiffs do not dispute that such claims are beyond the applicable statute of limitations, but argue that the Village Defendants engaged in a continuous course of conduct which extends the accrual period. (Pls. Opp. Br. at 30.)

Plaintiffs are correct in that the statute of limitations accrues anew each day for continuing wrongs, thus extending the accrual period. See Cnty. of Suffolk, N.Y. v. Travelers, Ins. Co., 267 F. Supp. 2d 288, 296 (E.D.N.Y. 2003); Bloomingdales, Inc. v. N.Y.C. Transit Auth., 52 A.D.3d 120, 125, 859 N.Y.S.2d 22 (1st Dep't 2008). Here, however, Plaintiffs do not allege the kind of "continuing wrongs" that would save their untimely claims. For example, Plaintiffs' trespass claims occurred when the Village Defendants entered the Park Street property and demolished the Building. The demolition--a singular, discrete act--occurred over the course of two days in 2011. Once the demolition was complete, there was no continuing wrong. Contra Kennedy v. United States, 643 F. Supp. 1072, 1079 (E.D.N.Y. 1986) (claims that jetties continually blocked normal replenishment of sand were not barred by the statute of limitations).

Plaintiffs' argument that the wrongs continued because the Village Defendants passed the Political Sign Ordinance after

the demolition is unavailing as to their trespass and tortious interference with business relations claims. Such claims clearly relate solely to the demolition. (See Compl. ¶¶ 334, 342.) Plaintiffs' nuisance, prima facie tort, and emotional distress claims, however, arguably relate to the Political Sign Ordinance as well. As the Village Defendants correctly assert that Plaintiffs' state law tort claims pertaining to the demolition are untimely, their motion is GRANTED in this respect, and Plaintiffs' trespass and tortious interference with business relations claims are DISMISSED WITH PREJUDICE.

    2. <u>Notice of Claim</u>

The Village Defendants further argue that Plaintiffs failed to timely serve a Notice of Claim, thus necessitating dismissal of Plaintiffs' malicious prosecution, abuse of process, nuisance, prima facie tort, and emotional distress claims. (Village Defs. Br. at 22.) The Court agrees.

Plaintiffs counter, first, by arguing that two exceptions to the Notice of Claim requirement apply in the instant case--this case is one for injunctive relief in which damages are incidental, and this action has been brought to vindicate a public interest. (Pls. Opp. Br. at 31-32.) Neither argument is availing.

"[S]ervice of a notice of claim is not required where the cause of action is in equity and money damages are merely

incidental . . . ." <u>Smith v. Town of Long Lake</u>, 40 A.D.3d 1381, 837 N.Y.S.2d 391 (3d Dep't 2007). Here, even considering Plaintiffs' requests for injunctive relief and their PI requests, the core of this case is a Section 1983 action for damages. Plaintiffs allege millions of dollars in damages for state law and constitutional violations. Such claims are more than merely incidental to the injunctive relief that Plaintiffs request. <u>See</u> <u>Palmieri v. Vill. of Babylon</u>, 26 A.D.3d 423, 423, 809 N.Y.S.2d 566 (2d Dep't 2006).

Plaintiffs also argue that the Notice of Claim requirement does not apply because they have brought suit to vindicate a public interest. This, however, is a private lawsuit seeking to vindicate the specific alleged constitutional violations against Plaintiffs. <u>See</u> <u>Humphrey v. Cnty. of Nassau</u>, No. 06-CV-3682, 2009 WL 875534, at *20 (E.D.N.Y. Mar. 30, 2009). In fact, the Complaint explains in great detail how Defendants have targeted Plaintiffs in particular.

Finally, Plaintiffs additionally assert that their state law claims are not barred because they did file a Notice of Claim on December 1, 2011. (<u>See</u> Miranda Decl. Ex. O.) As best the Court can discern from the almost entirely illegible Notice of Claim at issue, it relates entirely to the demolition, and provides no notice of any allegations regarding the Political Sign Ordinance. (<u>See</u> Miranda Decl. Ex. O.) Nor did

the Article 78 proceedings sufficiently alert the Village

Defendants to many of the claims that Plaintiffs raise in the

instant action.[12]  See <u>Brown v. City of N.Y.</u>, 95 N.Y.2d 389, 393,

718 N.Y.S.2d 4 (2000) (explaining that the standard in

determining the sufficiency of a Notice of Claim is "whether

based on the claimant's description municipal authorities can

locate the place, fix the time and understand the nature of the

accident").

     Accordingly, the Village Defendants' motion to dismiss

in this regard is GRANTED, and Plaintiffs' malicious

prosecution, abuse of process, nuisance, prima facie tort, and

emotional distress claims are DISMISSED WITH PREJUDICE.

---

[12] The Court also notes that Plaintiffs' failure to serve a
Notice of Claim against the individual Village Defendants
likewise bars the state law tort claims against them.  Although,
"the requirements of Sections 50-e and 50-I are not conditions
precedent to the commencement of an action against a county
official or employee 'unless the county is required to indemnify
such person,'" <u>Poux v. Cnty. of Suffolk</u>, No. 09-CV-3081, 2010 WL
1849279, at *13 (E.D.N.Y. May 4, 2010) (quoting <u>Grasso v.
Schenectady Cnty. Pub. Library</u>, 30 A.D.3d 814, 817, 817 N.Y.S.2d
186 (3d Dep't 2006)), Plaintiffs' claims relate to Mahler and
Cherson's actions in their official capacity, <u>see Sandy Hollow
Assocs. LLC v. Inc. Vill. of Port Washington N.</u>, No. 09-CV-2629,
2010 WL 6419570, at *18 (E.D.N.Y. Sept. 6, 2010), <u>adopted by</u>
2011 WL 1260245 (E.D.N.Y. Mar. 30, 2011) ("[A]ll of Plaintiffs'
allegations pertain to conduct by the Individual Defendants
while serving as Mayor, member of the Board or Building
Inspector for the Village and thus, Plaintiffs' claims against
the Individual Defendants relate solely to their status as
County employees." (internal quotation marks and citation
omitted)).

L.   Defendant-Specific Arguments

Finally, the respective motions to dismiss also raise arguments specific to those particular Defendants. The Engineering Defendants assert that Plaintiffs' constitutional claims are not applicable to them and that, in any event, they are entitled to absolute immunity. The Village Defendants maintain that they are entitled to legislative and qualified immunity. The Court will address the Engineering Defendants' arguments first.

1.   Constitutional Claims as Applied to the Engineering Defendants

To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983. Similarly, "the New York State Constitution only permit[s] suits against state actors acting under color of state law . . . ." Hightower v. United States, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002);

accord Algarin v. N.Y.C. Dep't of Corr., No. 06-CV-0508, 2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006).

Here, Plaintiffs' only basis for asserting that the Engineering Defendants acted under color of state law is that they allegedly conspired with state actors. (See Pls. Opp. Br. at 38.) "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (internal quotation marks and citation omitted); see also Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (stating that a Section 1983 conspiracy requires (1) an agreement between state and private actors; "(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages"). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello, 292 F.3d at 324; see also Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).

Plaintiffs have not proffered any allegations that would plausibly suggest a "meeting of the minds." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Rather, Plaintiffs

simply allege that the Village Defendants hired the Engineering Defendants, and that the Engineering Defendants provided expert opinions with which Plaintiffs disagreed. This is insufficient.

As Plaintiffs have not adequately alleged that the Engineering Defendants were state actors for their constitutional claims, and because Plaintiffs' state law claims have been dismissed, the Engineering Defendants' motion to dismiss the Complaint against them is GRANTED.

2. Legislative Immunity as to the Village Defendants

The Village Defendants assert that legislative immunity precludes Plaintiffs' Section 1983 claims against them. The Court disagrees.

"Municipal legislators are entitled to absolute legislative immunity for claims brought under § 1983." S. Lyme Prop. Owners, 539 F. Supp. 2d at 557. However, legislative immunity applies only to legislative acts, and courts have specifically differentiated acts of enforcement, such as Plaintiffs allege here. Id. at 558; see also Altaire Builders, Inc. v. Vill. of Horseheads, 551 F. Supp. 1066, 1073 (W.D.N.Y. 1982) ("Several courts have recognized a distinction between the enactment and the enforcement of legislation.").

Moreover, "legislative immunity bars suits against municipal officials only when those officials are sued in their personal capacity; the doctrine does not apply to official-

capacity suits." <u>S. Lyme Prop. Owners</u>, 539 F. Supp. 2d at 558.
As Plaintiffs' claims against the Village Defendants are
primarily--if not entirely--against them in their official
capacity, the Village Defendants are not entitled to legislative
immunity.

Accordingly, the Village Defendants' motion to dismiss
on the basis of legislative immunity is DENIED.

3. <u>Qualified Immunity as to the Village Defendants</u>

The Village Defendants also maintain that they are
entitled to qualified immunity. The Court disagrees.

Qualified immunity shields government officials from
civil liability resulting from the performance of their
discretionary functions only where their conduct "does not
violate clearly established statutory or constitutional rights
of which a reasonable person would have known." <u>Harlow v.</u>
<u>Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396
(1982). However, even if a defendant's conduct was objectively
reasonable, where a plaintiff alleges an unconstitutional
motivation, he may be denied qualified immunity. <u>See</u> <u>Sheppard</u>
<u>v. Beerman</u>, 94 F. 3d 823, 828 (2d Cir. 1996). Moreover,
although a qualified immunity defense should be asserted as soon
as possible, such defense "faces a formidable hurdle when
advanced at such an early stage in the proceedings." <u>Cathedral</u>
<u>Church of the Intercessor v. Inc. Vill. of Malverne</u>, 353 F.

Supp. 2d 375, 391 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). Given Plaintiffs' allegations regarding impermissible motive, and the factual issues surrounding this inquiry, the Village Defendants' motion to dismiss on qualified immunity grounds is DENIED.

CONCLUSION

For the foregoing reasons, Judge Lindsay's oral R&R is ADOPTED, Plaintiffs' objections are OVERRULED, and Plaintiffs' requests for a PI (Docket Entries 3, 30) are DENIED. In addition, the Engineering Defendants' motion to dismiss as against them is DENIED on Rooker-Feldman grounds but otherwise GRANTED as explained above, and the Clerk of the Court is directed to terminate R&W and Williams as defendants in this matter.

Finally, the Village Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. It is GRANTED in the following respects: (1) Pamela Makaea lacks standing to assert claims relating to the demolition and M.A. Salazar, Victoria Libbey Simao, Pamela Makea, and Atlantic Beach Associates, Inc. lack standing to bring claims regarding the First Amendment and Political Sign Ordinance; (2) Plaintiffs' substantive due process claim is DISMISSED WITH PREJUDICE; (3) Plaintiffs' Equal Protection claim based on the demolition is DISMISSED WITHOUT PREJUDICE; (4) Plaintiffs' allegations of First Amendment

violations and the equivalent under the New York State Constitution prior to April 15, 2010 are time-barred and therefore DISMISSED WITH PREJUDICE; (5) Plaintiffs' trespass and tortious interference claims time-barred and therefore DISMISSED WITH PREJUDICE; and (6) Plaintiffs' malicious prosecution, abuse of process, nuisance, prima facie tort, intentional infliction of emotional distress, reckless infliction of emotional distress, and negligent infliction of emotional distress are DISMISSED WITH PREJUDICE for failure to file a Notice of Claim. Accordingly, the Clerk of the Court is directed to terminate Pamela Makaea as a plaintiff in this action. The Village Defendants' motion to dismiss is otherwise DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November __4__, 2013
       Central Islip, NY